IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CR-22-D-1

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v. )<br>)<br>EQUAN CORNELIUS DUNSTON, )<br>)<br>Defendant. ) | ORDER |

On March 24, 2020, Equan Cornelius Dunston ("Dunston" or "defendant") moved pro se for a sentence reduction under the First Step Act of 2018 ("First Step Act"), Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 [D.E. 41]. On January 12, 2021, Dunston moved pro se for compassionate release under the First Step Act [D.E. 46]. On June 30, 2021, Dunston, through counsel, filed a memorandum in support of his motion for compassionate release [D.E. 50]. On November 5, 2021, the government responded in opposition to Dunston's motions [D.E. 53, 54], and filed documents in support [D.E. 55, 56]. On November 12, 2021, Dunston replied [D.E. 57]. As explained below, the court denies Dunston's motions.

I.

On March 5, 2018, pursuant to a written plea agreement, Dunston pleaded guilty to conspiracy to distribute and possess with the intent to distribute 28 grams or more of cocaine base (crack). See [D.E. 14, 16]. On June 4, 2018, the court held Dunston's sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See Fed. R. Crim. P. 32(i)(3)(A)–(B); PSR [D.E. 22]; [D.E. 28]. The court calculated Dunston's total offense level to be 29, his criminal history category to be III, and his advisory guideline range to be 108 to 135 months'

imprisonment. See PSR ¶ 60; [D.E. 28]. After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Dunston to 114 months' imprisonment. See [D.E. 28, 29]. Dunston did not appeal.

II.

Dunston seeks a sentence reduction under section 404 of the First Step Act. On August 3, 2010, Congress enacted the Fair Sentencing Act of 2010 ("Fair Sentencing Act"), Pub. L. No. 111-220, 124 Stat. 2372 (codified as amended at 21 U.S.C. §§ 801, et seq.). Section 2 of the Fair Sentencing Act reduced statutory penalties by increasing the drug quantities necessary to trigger certain statutory minimums and maximums. For example, the amount of crack cocaine necessary to trigger a 5 to 40 year sentence increased from 5 to 28 grams. Likewise, the amount of crack cocaine necessary to trigger a 10 year to life sentence increased from 28 grams to 280 grams. See id., § 2, 124 Stat. at 2372.

The First Step Act makes the Fair Sentencing Act's reductions in mandatory minimum sentences apply retroactively to defendants who committed their "covered offense" of conviction before August 3, 2010. See First Step Act § 404(a), 132 Stat. at 5222. Section 404(a) defines "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act . . ., that was committed before August 3, 2010." Id. Under the First Step Act, "[a] court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." Id. § 404(b), 132 Stat. at 5222. A court that modifies a sentence under the First Step Act does so under 18 U.S.C. § 3582(c)(1)(B), which allows a court to "modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); see Terry v. United States, 141 S. Ct. 1858, 1862 (2021); United States

2

v. Lancaster, 997 F.3d 171, 174–76 (4th Cir. 2021); United States v. Collington, 995 F.3d 347, 353 (4th Cir. 2021); United States v. Woodson, 962 F.3d 812, 815–17 (4th Cir. 2020); United States v. Chambers, 956 F.3d 667, 671 (4th Cir. 2020); United States v. Wirsing, 943 F.3d 175, 183 (4th Cir. 2019); United States v. Alexander, 951 F.3d 706, 708 (6th Cir. 2019).

Dunston's 2018 conviction for conspiracy to distribute and possess with the intent to distribute 28 grams or more of cocaine base (crack) is not a covered offense under section 404(a) of the First Step Act because Dunston committed the offense after August 3, 2010, and he received the benefit of the Fair Sentencing Act's modifications in his original sentencing. See First Step Act § 404(a), 132 Stat. at 5222; United States v. McDonald, 986 F.3d 402, 404 (4th Cir. 2021) ("The First Step Act applies to any defendant who was convicted of an offense whose statutory penalties were modified by section 2 or 3 of the Fair Sentencing Act of 2010 that was committed before August 3, 2010.") (quotation omitted). Thus, Dunston is not eligible for sentence reduction under section 404(a) of the First Step Act.

III.

Dunston also seeks compassionate release under the First Step Act. Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a defendant's term of imprisonment if (1) "extraordinary and compelling reasons warrant such a reduction" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison," and the Director of the Bureau of Prisons ("BOP") has determined the defendant is not a danger to another person or the community. 18 U.S.C. § 3582(c)(1)(A); see United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022); United States v. High, 997 F.3d 181, 185–86 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330 (4th Cir.) (per curiam), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 275–77 (4th Cir. 2020). A section 3582(c)(1)(A) sentence reduction must comport with the 18 U.S.C. § 3553(a) factors and

3

applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(1)(A); Hargrove, 30 F.4th at 194.

Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), a defendant must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). This requirement is nonjurisdictional, and the government waives a defense based on section 3582(c)(1)(A)'s exhaustion requirements if the government does not timely raise it. See United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021).

When considering a defendant's compassionate release motion, the court determines whether extraordinary and compelling circumstances exist and whether, in the court's discretion, those circumstances warrant relief in light of relevant factors in 18 U.S.C. § 3553(a) and applicable Sentencing Commission policy statements. See Hargrove, 30 F.4th at 194–95; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–32. In evaluating the section 3553(a) factors, the court considers, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, the defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote respect for the law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Although a court considers a defendant's post-sentencing conduct, rehabilitation alone is not an extraordinary and compelling reason. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13, cmt. n.3; McCoy, 981 F.3d at 286 n.9.

4

No Sentencing Commission policy statement applies to a defendant's compassionate release motion. See Hargrove, 30 F.4th at 194; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–31; McCoy, 981 F.3d at 281–82. The policy statement at U.S.S.G. § 1B1.13 applies to compassionate release motions filed by the Director of the BOP. Nonetheless, section 1B1.13 "remains helpful guidance even when motions are filed by defendants." McCoy, 981 F.3d at 282 n.7; see Hargrove, 30 F.4th at 194. Application Note 1 of U.S.S.G. § 1B1.13 lists several extraordinary and compelling circumstances, including (A) a defendant's serious medical condition, (B) a defendant's age, when coupled with serious physical or mental deterioration due to age and having served 10 years or 75 percent of his or her sentence, (C) certain family circumstances in which a defendant's minor children, incapacitated spouse, or registered partner would otherwise have no caregiver, or (D) any other extraordinary and compelling reason. U.S.S.G. § 1B1.13, cmt. n.1(A). "[A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant" a sentence reduction. Id. § 1B1.13, cmt. n.2.

Dunston applied to his warden for compassionate release. On November 20, 2020, the warden denied Dunston's request. See [D.E. 46] 1; [D.E. 46-1]. More than 30 days passed between Dunston's application and his motion, and the government does not contest exhaustion. Accordingly, the court considers Dunston's motion on the merits. See Muhammad, 16 F.4th at 130.

In support of his motion for compassionate release, Dunston cites the COVID-19 pandemic, his history of smoking, his family history of high blood pressure and diabetes, his rehabilitation efforts, and his release plan. See [D.E. 41] 4; [D.E. 50] 2–6; [D.E. 56] 2–3, 8–9.

Under the "medical condition of the defendant" policy statement, a defendant may qualify for compassionate release if the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the

5

environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Dunston argues that his history of smoking and his family history of high blood pressure and diabetes put him at heightened risk of serious infection from COVID-19. See [D.E. 50] 4–6. Dunston, however, refused the COVID-19 vaccine. See [D.E. 55] 10, 16. Dunston has not disclosed to the court any religious or medical reason why he cannot receive a COVID-19 vaccine. "[A] prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an 'extraordinary and compelling' justification for release. The risk is self-incurred." United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021); see also United States v. Thomas, No. 21-1645, 2022 WL 296594, at *2 (3d Cir. Feb. 1, 2022) (unpublished) ("District courts routinely deny compassionate release to inmates who refuse the COVID-19 vaccine because they have voluntarily failed to mitigate the very health concerns they identify in support of an early release."); United States v. Kennedy, No. 21-2675, 2022 WL 43187, at *2 (6th Cir. Jan. 5, 2022) (unpublished) ("But these [health] risks can be significantly ameliorated by vaccination, and the district court correctly explained that defendants may not perpetuate their own extraordinary and compelling circumstances for compassionate release by declining the Bureau of Prison's attempt to protect them." (cleaned up)); United States v. Church, No. 21-1840, 2021 WL 5632062, at *2 (3d Cir. Dec. 1, 2021) (per curiam) (unpublished) ("We agree that [defendant's] unexplained refusal to accept a COVID-19 vaccination when offered negates his otherwise compelling medical reasons for release" (quotation omitted)); United States v. Hald, 8 F.4th 932, 936 n.2 (10th Cir. 2021) (noting "there is certainly room for doubt" that being fully vaccinated or being offered a vaccine "would support a finding of 'extraordinary and compelling reasons'" justifying compassionate release), cert. denied, No. 21-6594, 2022 WL 1611819 (U.S. May 23, 2022); United States v. Baeza-Vargas, No. CR-10-00448-010-PHX-JAT, 2021 WL 1250349, at *2–4 (D. Ariz.

6

Apr. 5, 2021) (collecting cases showing the "growing consensus" of district courts that have ruled that an inmate refusing a COVID-19 vaccine "weighs against a finding of extraordinary and compelling circumstances"); cf. United States v. Osman, No. 21-7150, 2022 WL 485183, at *1 n.2 (4th Cir. Feb. 17, 2022) (per curiam) (unpublished); United States v. Petway, No. 21-6488, 2022 WL 168577, at *2 (4th Cir. Jan. 19, 2022) (per curiam) (unpublished).

Dunston claims that his medical conditions have worsened during the time he has been incarcerated, but he does not argue that the BOP is not treating and monitoring his conditions or that he is unable to provide self-care while incarcerated. Cf. [D.E. 56] 8. Arguments based on generalizations about the spread of COVID-19 in prison have considerably less force given the wide availability of COVID-19 vaccines, the current conditions at FCI Butner where Dunston is incarcerated,[1] and BOP's extensive efforts to control and contain COVID-19. See Bureau of Prisons, BOP's COVID-19 Response, https://www.bop.gov/coronavirus/overview.jsp#bop_covid-19 _response (last visited June 15, 2022); cf. United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021) Accordingly, reducing Dunston's sentence does not comport with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

The court assumes without deciding that the risk to Dunston from COVID-19 in light of his history of smoking, his family medical history, Dunston's rehabilitation efforts, and his release plan constitute extraordinary and compelling reasons under the "other reasons" policy statement and section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone

---

[1] As of June 15, 2022, FCI Butner Medium II has reported zero current inmate confirmed test positives, and three staff positives. See https://www.bop.gov/coronavirus (last visited June 15, 2022).

7

cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). As for the risk from COVID-19, the wide availability of COVID-19 vaccines greatly diminishes the risk to Dunston from COVID-19 whether he is in prison or not. See, e.g., United States v. Scalea, No. 21-2631, 2022 WL 795425, at *1 (3d Cir. Mar. 15, 2022) (unpublished); United States v. Ibarra, No. 21-10255, 2022 WL 229198, at *1 (9th Cir. Jan. 25, 2022) (unpublished); United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021); Hald, 8 F.4th at 936 n.2; Broadfield, 5 F.4th at 803; Baeza-Vargas, 532 F. Supp. 3d at 843–46. Furthermore, even though Dunston refused vaccination, the availability of COVID-19 vaccines continue to afford Dunston the ability to reduce his risk. See Thomas, 2022 WL 296594, at *2; Kennedy, 2022 WL 43187, at *2; Broadfield, 5 F.4th at 803. Moreover, the section 3553(a) factors counsel against reducing Dunston's sentence. See Hargrove, 30 F.4th at 198–200; High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Dunston is 31 years old and is incarcerated for conspiracy to distribute and possess with the intent to distribute 28 grams or more of cocaine base (crack). See PSR ¶¶ 1–3. Dunston was a source of supply for cocaine and crack in Eastern North Carolina and engaged in seven controlled buys in a two month period. See id. ¶¶ 6, 8. Dunston was accountable for possessing with intent to distribute 337.41 grams of cocaine base (crack) and 14 grams of cocaine. See id. ¶ 10. Dunston also had a loaded firearm at his residence when law enforcement searched the location pursuant to a search warrant. See PSR ¶ 9; cf. PSR ¶ 8. Dunston also has a dangerous and violent criminal history. Before his federal conviction, Dunston had convictions in state court for simple affray, possession of marijuana, assault on a government official or employee (two counts), carrying a concealed weapon, fleeing to elude arrest with two aggravating factors, assault with a deadly weapon

(where Dunston attempted to use the car he was driving to run over a deputy sheriff), possession of stolen property, and assault on a female (for attempting to strangle the mother of his child, hitting her in the back of the head with a telephone, and pointing a rifle at her). See id. ¶¶ 16–35. Dunston also has a poor record on state supervision, including failing to report as instructed, absconding from supervision, testing positive for illegal drug use, failing to attend drug treatment, incurring new criminal charges, and failing to pay supervision fees. See id. ¶¶ 16, 19.

Dunston has taken some positive steps while federally incarcerated. For example, Dunston has taken education courses, such as courses in parenting and drug education. See [D.E. 50] 3, 5; [D.E. 56] 8; [D.E. 46-2]. Dunston has worked as an orderly. See [D.E. 50] 2; [D.E. 56] 8.

The court must balance Dunston's rehabilitation efforts with his serious criminal conduct, his terrible criminal history, his poor performance on supervision, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Pepper, 562 U.S. at 480–81; High, 997 F.3d at 187–91; McDonald, 986 F.3d at 412; Martin, 916 F.3d at 398. The court also has considered Dunston's potential exposure to COVID-19 along with his risk factors, and his release plan. Dunston's release plan includes living with his elderly grandmother and obtaining employment at a packaging facility. See [D.E. 50] 4–6. Moreover, although Dunston has refused the COVID-19 vaccine, the wide availability of COVID-19 vaccines for others means that Dunston "largely faces the same risk from COVID-19 as those who are not incarcerated." Lemons, 15 F.4th at 751. Having considered the entire record, the extensive steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Dunston's arguments, the government's persuasive response, the need to punish Dunston for his serious criminal behavior, to incapacitate Dunston, to promote respect for the law, to deter others, and to protect society, the court denies Dunston's motion

for compassionate release. See, e.g., Chavez-Meza, 138 S. Ct. at 1966–68; Hargrove, 30 F.4th at 198–200; High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32.

IV.

In sum, the court DENIES Dunston's section 404 motion [D.E. 41], and DENIES Dunston's motion for compassionate release [D.E. 46].

SO ORDERED. This 16 day of June, 2022.

JAMES C. DEVER III
United States District Judge